[No. A031867. First Dist., Div. Four. July 30, 1986.]

JAMES G. GHENT, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Appellants;
COUNTY OF HUMBOLDT, Real Party in Interest and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant Attorney General, and John Davidson, Deputy Attorney General, for Defendants and Appellants.

John William Cumming for Plaintiff and Respondent.

No appearance for Real Party in Interest and Respondent.

## OPINION

ANDERSON, P. J.—In this appeal the State of California asks us to reverse the trial court's decision ordering it to reconsider its refusal to grant unemployment insurance benefits to respondent James G. Ghent (Ghent). We agree with the state and reverse the judgment.

Ghent quit his job in Sacramento and moved to Humboldt County (County). Shortly thereafter he filed a claim for unemployment insurance benefits with the Employment Development Department (Department). The Department determined that he was ineligible to receive benefits because he had voluntarily quit his most recent employment "without good cause." The determination also provided that Ghent's disqualification would not be purged "until [he] earn[ed] $380[1] or more in bona fide employment for work performed after 6-9-82."

Thereafter Ghent applied for and was granted general relief assistance by the County. As a condition for receiving this aid he was required to and did perform work assigned by the County. Ghent's monthly relief grant was $199, and his assigned work each month was credited against his grant at the hourly rate of $3.35. If Ghent had not performed the assigned services, he would not have received the aid. Ghent received one-half of his monthly aid at the beginning of the month, and the balance at the end, after his services were completed.

After two months of performing work and receiving aid from the County, Ghent refiled his claim for unemployment insurance benefits with the Department; by this time he had received over $380 in relief from the County. The Department again denied Ghent's application for benefits, this time on the grounds that the work relief program did not constitute "bona fide employment" which would purge his disqualification.[2]

---

[1]Five times his weekly benefit amount pursuant to section 1260 of the Unemployment Insurance Code. (See discussion, *post.*)

[2]The Department's reason for decision stated in part: "REASON FOR DECISION: [¶] Under California Law relief payments are mandatory where the individual applicant meets the condition of eligibility. Any work which may be required of a recipient of relief is a condition subsequent and not precedent to the determination of need and the allowance of aid. The aid is not wages in the first instance but a subsistence allowance nor does it become wages when services are performed by the recipient on a relief project. Relief project work is created for rehabilitation and morale purposes. Engaging in such does not place the claimant in employment nor establish a bona fide employer-employee relationship."

Ghent appealed the disqualification and a hearing was held before an administrative law judge (ALJ) of the California Unemployment Insurance Appeals Board (appellants or Appeals Board). The ALJ affirmed the disqualification on the grounds that participation in the work relief program was explicitly excluded from the definition of "employment" (under § 634.5, subd. (e) of the Unemp. Ins. Code[3]) and thus was not that "bona fide employment" necessary to purge a disqualification. Thereafter the Appeals Board conducted an independent review of the record and affirmed the decision of the ALJ.[4]

Having exhausted his administrative remedies, Ghent petitioned the superior court for a writ of mandamus directing appellants to set aside their decision and reconsider his eligibility for unemployment insurance benefits. The trial court granted the writ, finding that Ghent's workfare was in a common law employment relationship which purged his prior disqualification for unemployment benefits.

## I. *Standard of Review*

We are aware of no other California case deciding whether or not participation in a county work relief program (popularly known as "workfare") will purge a disqualification from receiving unemployment insurance benefits. In accordance with section 1094.5 of the Code of Civil Procedure the trial court reviewed the administrative record using its independent judgment. Judicial review of administrative decisions pursuant to this section is based solely on the record, and no new evidence is taken by the court.

---

[3]Unless otherwise indicated, all statutory references are to the Unemployment Insurance Code.

[4]The decision of the Appeals Board stated in part: "In Appeals Board Decision No. P-B-272 this Board construed the phrase 'bona fide employment' as used in section 1260(a) of the code. It was held that consideration must be given to various factors in determining whether employment is 'bona fide' among which are the character of the employment, how it was obtained, the wage paid, whether it was in the regular course of the employer's business and the claimant's customary occupation, the last wage received by the claimant, and whether the claimant is willing to accept future employment of the same kind and under the same conditions. The Board held that only these factors show that the claimant genuinely intended, by this employment, to return to or be attached to the labor market can the employment be 'bona fide.' [¶] In argument the claimant conceded (and the evidence supports) that the work-fare service performed was unlike his usual occupation and that he would not seek nor accept similar work, under ordinary circumstances. Further, the claimant did not apply for nor was he hired by the county to perform work. He performed the work in exchange for public assistance. [¶] Considering all the factors, we conclude that the criteria of Appeals Board Decision No. P-B-272 has not been satisfied and therefore the work-fare service was not 'bona fide employment' as that term is construed. Consequently, the claimant has failed to satisfy the prescribed conditions to purge the disqualification under section 1260(a) of the code."

■ The proper interpretation and application of statutes as well as regulations are questions of law properly before this court. (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) The Appeals Board decision under review here involves the interpretation of "bona fide employment" as used in an existing statute. ■ Although a "strong presumption" supports the correctness of the findings of an administrative agency (*Campbell* v. *Board of Dental Examiners* (1971) 17 Cal.App.3d 872, 875-876 [95 Cal.Rptr. 351]), the agency's conclusions of law are subject to de novo review by this court, independent of the trial court. (*Carmona, supra,* 13 Cal.3d at p. 310.)

In that review we look to the complete record before us. The parties agree upon the relevant facts as already stated and as summarized by the ALJ in his decision for the Appeals Board. We turn our attention to the law relevant thereto.

## II. *The Statutory Process for Renewing Eligibility for Unemployment Insurance Benefits*

■ The Unemployment Insurance Code provides for unemployment insurance benefits to be awarded to persons *involuntarily* and innocently unemployed. Section 1256 provides in pertinent part: "An individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause . . . ." Under section 1260, "An individual disqualified under Section 1256 . . . is ineligible to receive unemployment compensation benefits . . . until he has, subsequent to the act that causes disqualification and his registration for work, performed service in *bona fide employment* for which remuneration is received equal to or in excess of five (5) times his weekly benefit amount." (Italics added.)

The parties agree that Ghent left his Sacramento job voluntarily and without good cause and that in doing so he became disqualified from receiving further unemployment insurance benefits. To purge the disqualification under section 1260 Ghent must earn $380 or more in "bona fide employment."

## III. *The Issue on Appeal*

The issue on appeal is whether work performed by Ghent as a condition of receiving general relief under a County-operated work relief program constituted "bona fide employment" as used in section 1260, subdivision (a). If so, the amount of Ghent's grant constituted "remuneration" under

section 1260, which purges a disqualification, even where Ghent is *voluntarily* unemployed without good cause.

But before determining whether work relief is bona fide employment under section 1260, we must first find that it is, in fact, "employment."

### IV. *Work Relief Is Not Employment Under the Unemployment Insurance Code*

#### A. *The Statutory Law Analysis*

Work relief is not employment under the Unemployment Insurance Code. "Employment" is an elusive term which falls prey to some circularity of definition under the code. Section 601 follows the common law meaning of employment as "service . . . performed by an employee for wages or under any contract of hire . . . ." Under section 621 an "employee" is "Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."

Under Article II, section C of the Rules and Regulations Governing General Relief Program for Humboldt County, *all* recipients must reimburse the County for aid given in cash "subject to any credits for work performed on a work-for-relief project." Article II, section G, provides: "2. Persons assigned to work-for-relief sites shall be relieved of the obligation to repay the County for aid received to the extent that the number of hours worked at minimum wage equivalent equals the amount of aid received."

In addition to the recipient's obligation to repay County aid, a consideration of other relevant facts[5] leads inescapably to the conclusion that no contract of hire existed between the County and Ghent, and that Ghent did not perform service for "wages." As County correctly observes: "Claimant was not put to work through the same processes as are required for regular County employees. He made no contact with personnel; he filled out no application for a particular position; he was not screened by the department head. The County had established a certain number of necessary jobs by some departments, in response to a request from the Welfare Department for 'work-fare' jobs, but no pay scale was established, nor were the jobs funded. When Welfare had a qualified applicant, he was sent to the department to fill one of the 'work-fare' slots. His aid grant was measured by his need, not by the type or amount of work he did." In addition, the County

---

[5]To establish the existence of an employer-employee relationship, it is necessary to examine and weigh all relevant facts and circumstances. (*Johnson* v. *Banducci* (1963) 212 Cal.App.2d 254, 262 [27 Cal.Rptr. 764].)

had no ability to "hire and fire" work relief participants in the traditional meaning of those terms, and it paid participants at the same rate, regardless of what work they performed.

As the ALJ correctly held, the position that work relief is not employment under the code finds further support in section 634.5, subdivision (e), which excludes from the definition of "employment" service performed "As part of an unemployment work-relief or work-training program assisted or financed in whole or in part by any federal agency or an agency of a state or political subdivision thereof, by an individual receiving such work relief or work training."

## B. *The Case Law Analysis*

**(4)** Ghent relies heavily upon *County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391 [179 Cal.Rptr. 214, 637 P.2d 681], which holds that work relief is "employment" for purposes of workers' compensation; he argues it follows that an employment relationship exists between the County and the workfare participant for all purposes.

*County of Los Angeles* held that an indigent person who is required to work in order to receive general assistance benefits is entitled to workers' compensation for an injury sustained on the job. In reaching this holding, the court found that "Respondent is an employee within the meaning of the Workers' Compensation Act." (*County of Los Angeles, supra,* 30 Cal.3d at p. 407.)

This definition of employment should NOT be extended to claims arising outside the Workers' Compensation Act. For, our Supreme Court was very careful in defining employment to repeatedly limit its finding of employee status to "*within the meaning of the Workers' Compensation Act.*" (*County of Los Angeles, supra,* 30 Cal.3d 391, 406-407, italics added.) For each time it referred to work relief as employment, it restricted that holding to "employment within the meaning of the Workers' Compensation Act." In so circumscribing its holding the court impliedly rejected the Workers' Compensation Appeals Board's more general finding "that an indigent who is required to work as a condition of receiving welfare benefits qualifies as an employee." (*Id.,* at p. 396.)

Furthermore, public policy dictates a different definition for "employee" under the Unemployment Insurance Code than under the Workers' Compensation Act. Public policy encourages participation in work relief as a way of transferring employable persons from the welfare dole to the employment role. If a participant is injured while on a work relief job, to deny

him employee status which then precludes his receipt of workers' compensation would discourage participation in work relief—an undesirable effect. While to deny employee status to work relief participants under the Unemployment Insurance Code would have a beneficial effect—to encourage employment. If, on the other hand, remaining on work relief were to purge unemployment insurance benefit disqualifications, an undesirable effect would result: able-bodied workers would be encouraged to hop from county to county, munch from one public treasury to another and thereby multiply the ranks of the unemployed.

### V. *Conclusion*

The real issue of this case is the status of the work performed and the aid received. If the aid cannot be considered as "remuneration" resulting from "bona fide employment," then it cannot be applied to purge Ghent's disqualification under section 1260. We hold that Ghent's participation in the County's work relief program and receipt of aid therefrom did not establish either a statutory or common law employment relationship between the County and Ghent. Since workfare is not employment, it does not satisfy the requirement of "bona fide employment" as defined under California Administrative Code, title 22, section 1260, subdivision (a)-1, necessary to purge (pursuant to § 1260) a disqualification resulting from voluntary unemployment without good cause.

The judgment of the trial court is reversed.

Pursuant to rule 26 of the California Rules of Court as amended effective July 1, 1986, costs are awarded to the appellants.

Channell, J., and Sabraw, J., concurred.

A petition for a rehearing was denied August 29, 1986, and the petition of plaintiff and respondent for review by the Supreme Court was denied October 15, 1986.